## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| IN RE: | CASE NO. 2:15-bk-20206 |
| STEPHANIE LYNNE PINSON and KENDALL QUINN PINSON, | CHAPTER 7 |
| Debtors. | JUDGE FRANK W. VOLK |
| STEPHANIE LYNNE PINSON and KENDALL QUINN PINSON, | ADVERSARY PROCEEDING NO. 2:15-ap-02022 |
| Plaintiffs, | |
| v. | |
| PIONEER WV FEDERAL CREDIT UNION, | |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending are Defendant's Motion to Dismiss Plaintiffs' Claim for Penalties and Costs for Defendant's Alleged Violation of the Truth in Lending Act ("TILA"), filed November 6, 2015 ("Motion to Dismiss") [Dckt. 33] and Plaintiffs' Motion to Award Partial Judgment on the Pleadings, filed December 21, 2015 ("Motion for Partial Judgment on the Pleadings") [Dckt. 47]. The Motion to Dismiss is **GRANTED** to the extent set forth within and otherwise **DENIED** without prejudice. The Motion for Partial Judgment on the Pleadings is **DENIED** without prejudice.

The Plaintiffs, Stephanie Lynne and Kendall Quinn Pinson, claim, *inter alia*, that Pioneer WV Federal Credit Union ("Pioneer") violated TILA by failing to remove its security interest within 20 days following receipt of the Pinsons' rescission notice. Pioneer seeks dismissal

of the claim. The Pinsons responded in opposition to Pioneer's Motion to Dismiss on December

21, 2015, seeking affirmative relief, and Pioneer replied on January 4, 2016. The matter is ready

for adjudication.

## I.

On March 22, 2012, the Pinsons and Pioneer executed a mortgage through

Pioneer's closing agent, BesTitle Agency, Inc. The mortgage was designed to refinance an existing

loan and stave off foreclosure on the Pinson's home under a prior mortgage between the Pinsons

and Pioneer. *See* Compl. ¶¶ 36, 50-51. The new mortgage had a principal balance of $125,000.00,

*id.* ¶ 52, carried an annual interest rate of 8%, *id.*, was secured by a Deed of Trust on the Pinsons'

home, *id.* ¶ 53, and included a prior "charged-off" deficiency on a purchase money security interest

loan for a vehicle that Mr. Pinson alone owned, *id.* ¶¶ 37-42. Mr. Pinson surrendered that vehicle

in 2006. *Id.* ¶ 39. The March 22, 2012, loan required the Pinsons to make monthly payments of

$917.21. *Id.* ¶ 60.

The Complaint alleges that the Truth in Lending Disclosure Statement associated

with the March 22, 2012, loan "failed to provide timely the true, correct, and complete material

disclosures required by the . . . [TILA] and Regulation Z." *Id.* ¶ 63. The Complaint further alleges

that each of the Pinsons' signatures found on the Notice of Right to Cancel associated with the

March 22, 2012, loan were made on March 22, 2012, including those signatures dated March 27,

2012. *Id.* ¶¶ 68-69. The Complaint additionally alleges that the Pinsons did not return to BesTitle

Agency's office, nor any other location on March 27, 2012, to sign the documents and that the

Pinsons were not given any documents to sign and return to BesTitle Agency or Pioneer in three

days. *Id.* ¶¶ 70-75.

2

The Pinsons were unable to make payments under the new mortgage and, in January 2015, Pioneer told the Pinsons they should put their home up for sale immediately as Pioneer intended to foreclose. *Id.* ¶¶ 77-78.

In February 2015, after seeking assistance from counsel, the Pinsons learned that Pioneer, at the time of the March 22, 2012, loan, had not provided them with the proper disclosures and notice of right to rescind required by TILA. *Id.* ¶¶ 80-82. On March 11, 2015, the Pinsons had their rescission notice delivered to Pioneer. *Id.* ¶ 145. Delivery of that rescission notice gave Pioneer 20 days "to take the steps necessary to terminate formally the Deed of Trust security interest in plaintiffs' principal dwelling, *or*, as an alternate, to seek a court order to unwind the transaction pursuant to steps different from those required by the statute." *Id.* ¶ 146 (emphasis added); *see* 15 U.S.C. § 1635(b); 12 C.F.R. § 1026.23(d)(2). The Complaint states that Pioneer has failed to honor the Pinsons' lawful rescission since March 11, 2015. Compl. ¶ 147.

On March 31, 2015, Pioneer instituted a declaratory judgment action in this district. Pioneer desired a binding determination respecting whether the Pinsons received their statutorily required disclosures. Def.'s Answer, at 29. On April 15, 2015, the Pinsons petitioned for relief under Chapter 13 of the Bankruptcy Code, staying the declaratory judgment proceeding pursuant to 11 U.S.C. § 362(a)(1). *In re Stephanie Lynne Pinson and Kendall Quinn Pinson*, No. 2:15-bk-20206 (Bankr. S.D. W. Va. Apr. 15, 2015). The Pinsons then instituted this adversary proceeding against Pioneer on July 17, 2015. In Count II, they seek, *inter alia*, statutory and actual damages for Pioneer's failure to honor and implement the rescission notice pursuant to 15 U.S.C. §1640. Compl., at 23. On August 19, 2015, Pioneer answered and counterclaimed, seeking the same relief pursued in the declaratory judgment action. *See* Def.'s Answer, at 33. On November 6, 2015,

Pioneer moved for judgment on the pleadings of the Pinsons' claims under Count II of the Complaint.

## II.

### A.    Governing Standard

Federal Rule of Civil Procedure 12(c) is made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Rule 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgement on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions are subject to the same legal standards applied to motions made under Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir. 2012); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

In adjudicating a motion for judgment on the pleadings, a court evaluates whether the pleadings state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). In doing so, a court must construe the "facts in the light most favorable to the [non-movant]," *Oberg*, 745 F.3d at 136 (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)), and "draw all reasonable inferences in [the non-movant's] favor." *Id.* (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). The court need not, however, "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *id.* (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)), nor "credit allegations that offer only 'naked assertions devoid of further factual enhancement . . . .'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks, alteration, and citation omitted)).

Akin to a Rule 12(b)(6) analysis, the Rule 12(c) calculus prescribes that "a court is not confined to the four corners of the complaint"; rather, a court "'may properly take judicial notice of matters of public record,' including statutes." *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Papasan v. Allain*, 478 U.S. 265, 298 (1986). Further, although "'[c]ourts have not explicitly defined what constitutes a public record for 12(b)(6) purposes . . . some have determined . . . letter decisions of government agencies[] and published reports of administrative bodies' to be public records that properly can be considered on a motion to dismiss." *Guthrie v. McClaskey*, No. 1:11CV00061, 2012 WL 5494457, at *3 (W.D. Va. Nov. 13, 2012) (footnote omitted) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)).

**B.      Law and Analysis**

Rule 7(a) provides that the pleadings are closed upon the filing of a complaint, an answer, an answer to a counterclaim designated as a counterclaim, and, if the court orders one, a reply to an answer, among other pleadings not at issue. Here, the Pinsons filed their Complaint and Pioneer filed its Answer, asserting therein a counterclaim for declaratory relief. The Pinsons have replied to that counterclaim. The pleadings are thus closed for purposes of Rule 12(c).

Based on the closed pleadings, Pioneer moves to dismiss Count II, which alleges its failure to honor the Pinsons' Rescission Notice. That allegation provides that "[m]ore than 20 calendar days passed [after delivery of the Rescission Notice] without [Pioneer] taking action necessary to reflect the termination of any security interest created by the transaction, or to obtain a court order modifying its legal obligation to do so, all as required by 15 U.S.C. § 1635(b) and Regulation Z § 1026.23(d)(2)." Compl. ¶ 146. The Pinsons contend that Pioneer "failed to obtain

any court order extending its period for compliance with 15 U.S.C. § 1635(b) or modifying

'procedures' prior to expiration of the statutory period for compliance." Pls.' Reply ¶ 19. On close

study, however, the portions of TILA and Regulation Z upon which the Pinsons rely in Count II

do not support their contentions.

      The relevant TILA mandate, found in 15 U.S.C. § 1635(b), provides pertinently as

follows:

> When an obligor exercises his right to rescind under subsection (a) of this section,
> he is not liable for any finance or other charge, and any security interest given by
> the obligor, including any such interest arising by operation of law, becomes void
> upon such a rescission. Within 20 days after receipt of a notice of rescission, the
> creditor shall return to the obligor any money or property given as earnest money,
> downpayment, or otherwise, and shall take any action necessary or appropriate to
> reflect the termination of any security interest created under the transaction. . . . The
> procedures prescribed by this subsection shall apply *except when otherwise ordered*
> *by a court.*

15 U.S.C. § 1635(b) (emphasis added). The relevant portion of Regulation Z, 12 C.F.R. §

1026.23(d), elaborates further:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall
> return any money or property that has been given to anyone in connection with the
> transaction and shall take any action necessary to reflect the termination of the
> security interest.
>
> . . .
>
> (4) The procedures outlined in paragraph[] (d)(2) . . . of this section *may be modified*
> *by court order.*

12 C.F.R. § 1026.23(d) (emphasis added).

      It is commonly understood that where the terms of Regulation Z are ambiguous,

courts are directed to "look to the [Bureau of Consumer Financial Protection's ("Bureau")][1] own

---

[1] The bracketed "Bureau" stands in place of "Board," which referred to the Federal Reserve
Board, the body which formerly promulgated the official interpretations of Regulation Z. The
Dodd-Frank Wall Street Reform and Consumer Protection Act transferred the applicable authority

interpretation of the regulation for guidance." *See Weintraub v. Quicken Loans, Inc.*, 594 F.3d 270, 276 (4th Cir. 2010) (noting that the language of the Official Staff Interpretations "further suggest[ed] that the right to rescind a security interest can only arise from a consummated transaction"); *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 207 (2011); *see In re Hill*, 213 B.R. 934, 940 (Bankr. D. Md. 1996) (stating, "The court's decision was issued in deference to the comments of the staff of the Federal Reserve Board," noting that although the commentary cited was "issued after the transaction in that case, and was therefore not binding upon the court, it was useful as guidance in clarifying how TILA should be interpreted" (discussing *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 943 (7th Cir. 1996))); *In re Lowenstein*, 459 B.R. 227, 240 (Bankr. E.D. Pa. 2011) (relying upon the Official Staff Commentary to find that sums retained by a private company cannot be excluded from the "finance charge" as the Official Staff Commentary provides that "[s]ums must be actually paid to public officials to be excluded from the finance charge under § 226.4(e)(1) and (e)(3)"). These official interpretations promulgated by the Bureau "may warrant deference as a general matter." *Chase Bank*, 562 U.S. at 211; *see Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981) (holding that the Bureau's "interpretation of its own regulation" should generally "be accepted by the courts"); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) ("Unless demonstrably irrational, . . . [the Bureau's] staff opinions construing [TILA] or Regulation [Z] should be dispositive.").

That portion of the official interpretations that examines section 1026.23(d)(2) of Regulation Z, entitled "Reflection of security interest termination," provides that "[t]he 20-day period for the creditor's action refers to the time within which the creditor must *begin* the process.

---

to promulgate those rules to the Bureau. Pub. L. No. 111-203, §§ 1061(b)(1), 1100A(2), 100H, 124 Stat. 2035, 2036, 2107, 2113 (2010).

It does not require all necessary steps to have been completed within that time, but the creditor is responsible for seeing the process through to completion." 12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(2)(3) (emphasis added). Additionally, those official interpretations provide as to "Modifications" under section 1026(d)(4) as follows:

> The procedures outlined in § 226.23(d)(2) and (3) may be modified by a court. For example, when a consumer is in bankruptcy proceedings and prohibited from returning anything to the creditor, or when the equities dictate, a modification might be made. The sequence of procedures under § 226.23(d)(2) and (3), or a court's modification of those procedures under § 226.23(d)(4), does not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly. *Where the consumer's right to rescind is contested by the creditor*, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed *before* establishing the procedures for the parties to tender any money or property.

12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(4)(1) (emphasis added).

Here, the Pinsons rescinded their March 22, 2012, transaction on March 11, 2015. Pioneer instituted its declaratory action in the Southern District of West Virginia on March 31, 2015, "seeking declaratory judgment as to whether the Debtors received their statutorily required disclosures." Def.'s Answer ¶ 18.[2]

That March 31, 2015, filing was made "[w]ithin 20 calendar days after receipt of a notice of rescission" and, therefore, constitutes the creditor taking the "action necessary to reflect the termination of the security interest." *See* 12 C.F.R. § 1026.23(d)(2). As explained in the official interpretations of that section, of which this Court takes judicial notice as "public records that properly can be considered on a motion to dismiss," *Guthrie*, No. 1:11CV00061, 2012 WL at *3, "[t]he 20-day period for the creditor's action refers to the time within which the creditor must

---

[2] The Court takes judicial notice of Pioneer's publicly available filing, *Pioneer WV Federal Credit Union v. Kendall Q. Pinson and Stephanie L. Pinson*, No. 2:15-03913 (S.D W. Va. Mar. 31, 2015).

*begin* the process. It does not require all necessary steps to have been completed within that time, but the creditor is responsible for seeing the process through to completion." 12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(2)(3) (emphasis added).

The Pinsons' argument that Pioneer "failed to obtain any court order extending its period for compliance with 15 U.S.C. § 1635(b) or modifying 'procedures' *prior to* expiration of the statutory period for compliance," Pl.'s Reply ¶ 19 (emphasis added), thus fails against the language of the statute and Regulation Z. To comply with its statutory obligations upon receipt of a notice of rescission, a creditor needs only to *begin* the process of seeking a court order declaring the rights of the parties.

The Pinsons' reliance on *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790 (2015), is similarly misplaced. The decision in *Jesinoski* held that when the parties dispute whether rescission is available, a borrower need not file suit to effect rescission. The Supreme Court stated that the language of TILA "leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. . . . The statute does not also require [the borrower] to sue within three years." *Id.* at 792.

Although *Jesinoski* held that the burden is not on the borrower to sue within three years, the "unilateral notification of cancellation does not automatically void the loan contract." *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir. 2012). Rather, although it is true that "a borrower exercises her right of rescission by merely communicating in writing to her creditor her intention to rescind[,] [t]o complete the rescission and void the contract . . . more is required." *Id.* "Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed

*before* establishing the procedures for the parties to tender any money or property." 12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(4)(1).

Here, Pioneer filed an action in federal district court seeking declaratory judgment as to whether the Pinsons had a right to rescind within the statutorily prescribed time frame of 20 days. That the Pinsons filed for bankruptcy, staying the district court proceeding, and that Pioneer objected to the treatment of its secured lien in bankruptcy and sought declaratory relief through its Answer in this adversarial proceeding as well, does not adversely impact Pioneer's compliance with the rescission provisions of Regulation Z.

## III.

Based upon the foregoing discussion, it is, accordingly, **ORDERED** that Pioneer's Motion to Dismiss is **GRANTED** to the extent set forth above and otherwise **DENIED** without prejudice. The Motion for Partial Judgment on the Pleadings is **DENIED** without prejudice.[3]

The Clerk shall transmit a copy of this written opinion and order to the parties and their counsel, if any, and the United States Trustee.

DATED: March 28, 2016

Frank W. Volk
United States Bankruptcy Judge

---

[3] The denial without prejudice is effective as to the balance of the parties' arguments not explicitly addressed herein. Those arguments are more appropriately considered at summary judgment.